FILED by ___ D.C.

ELECTRONIC

**MAR. 18, 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CIVIL ACTION

J.B. HARRIS,

      **Plaintiff Pro Se,**

v.                                **CASE NO:** _____

## 08-20703-CIV-HUCK/SIMONTON

UNITED AUTOMOBILE INSURANCE
GROUP, INC., a Florida corporation,
and CERIDIAN CORP., a foreign corporation,

      **Defendants.**

_____/

## VERIFIED APPLICATION FOR PRELIMINARY INJUNCTION, REQUEST FOR HEARING AND COMPLAINT FOR DAMAGES

**COMES NOW**, J.B. HARRIS ("HARRIS"), Plaintiff pro se, pursuant to Rule 65(a), Fed.R.Civ.P, and 29 U.S.C.A. § 1132(a)(1)(A) and (B), hereby sues Defendants, UNITED AUTOMOBILE INSURANCE GROUP, INC. ("UAIG"), a Florida corporation, and CERIDIAN CORP. ("CERIDIAN"), a foreign corporation, seeking a preliminary injunction and damages, and in support thereof states as follows:

### INTRODUCTION

1.      HARRIS brings this action to enjoin UAIG and CERIDIAN from further denying his duly entitled COBRA benefits arising under 29 U.S.C.A. § 1132 *et seq.*, retroactive to January 11, 2008, and continuing until this matter is either resolved by the parties, tried by a jury, or HARRIS' COBRA benefits naturally expire under the Plan, which ever is earliest.

2.      As demonstrated below, a preliminary injunction is necessary because the life, health and safety of HARRIS, his wife and three children are at risk of immediate and irreparable

harm.  HARRIS also is likely to succeed on the merits and, by comparison, the damages if any that would result to UAIG or CERIDIAN, should the court grant the injunction, would be negligible.

## JURISDICTION AND VENUE

3.    The court has jurisdiction pursuant to 28 U.S.C.A. § 1331, in that the matter in controversy is governed by Title 29, Chapter 18 of the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. § 1001 *et seq.* (ERISA), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985, Subchapter I, of the United States Code Annotated ("COBRA "). 29 U.S.C.A. § 1132 *et seq.*

4.    Pursuant to Rule 65(b), Fed.R.Civ.P., and 29 U.S.C.A. § 1132 (a)(3)(B)(i) and (ii), the court has the authority to grant legal and equitable relief.[1]  *See, e.g., Sunderlin v. First Reliance Standard Life Ins. Co.,* 235 F.Supp.2d 222 (W.D.N.Y.2002)(pursuant to ERISA section allowing civil actions to enjoin acts or practices that violate ERISA, sponsor of long-term

---

[1]  29 U.S.C.A. § 1132 states in part:

(a) Persons empowered to bring a civil action

A civil action may be brought--

    (1) by a participant or beneficiary--

        (A) for the relief provided for in subsection (c) of this section, or

        **(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;**

    (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

    (3) by a participant, beneficiary, or fiduciary **(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief** (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . (emphasis added).

2

disability plan had to provide participant with completed summary plan description (SPD) within certain number of days, and towards that end, plan insurer had to inform sponsor of procedures in place for presentation and review of claims under disability insurance plan); *Helwig v. Kelsey-Hayes Co.,* C.A.6, 93 F.3d 243 (6th Cir. 1996), cert. denied, 117 S.Ct. 690, 519 U.S. 1059, 136 L.Ed.2d 613 (retired employees demonstrated reasonable likelihood of success on the merits of ERISA claim challenging reduction of health care benefits, warranting granting of preliminary injunction pending resolution of action; summary plan descriptions (SPDs) promulgated by employer made clear, unambiguous promises of lifetime coverage and contained no valid provisions reserving right to modify or terminate benefits conferred, and those benefits vested at time each employee retired); *Newell v. Prudential Ins. Co. of America*, 904 F.2d 644 (11th Cir. 1990)(administrator of employee welfare benefit plan abused its discretion by ignoring policy standards for providing notice to insured and was liable for hospital expenses incurred between last date on which benefits were made available for hospitalization and date administrator first informed insured either that it had placed case on retroactive review or that no benefits would thereafter be available for hospitalization); *Stamps v. Michigan Teamsters Joint Council No. 43*, 431 F.Supp. 745 (E.D.Mich.1977)(this section providing that civil action may be brought by participant or beneficiary to recover benefits due him under terms of pension plan, and further providing that civil action may be brought by participant, beneficiary, or fiduciary to enjoin any act or practice which violates any provision of subchapter or terms of plan or to obtain other appropriate equitable relief, sets forth, in alternative, two remedies which are available to beneficiary; latter provision clearly and specifically creates civil action for equitable relief, while former provision creates civil action for legal relief.)

3

5.      Venue is proper because HARRIS is a resident of this District and the injuries complained of arise in this District.

6.      HARRIS has exhausted all administrative remedies prior to bringing this action.

## PARTIES

7.      HARRIS is a Florida attorney who has been a member in good standing of the Florida Bar since 1985 and who is authorized to practice before this court. He was formerly employed by UAIG as its in-house counsel for a short period of time in 2007.

8.      While employed by UAIG, HARRIS and his family were enrolled in and covered by a "CIGNA Health Care Open Access Plus," preferred patient health insurance plan (PPO), for which HARRIS paid a portion of the premium from his bi-weekly salary. The plan covered medical, dental and vision expenses for HARRIS, his wife and three children.

9.      UAIG is a Florida corporation headquartered in this District. Its primary business is selling minimum limits personal injury protection automobile insurance (PIP), through one or more of its subsidiaries.

10.     During an open enrollment period, UAIG offered to HARRIS the option of enrolling in the CIGNA Health Care PPO referenced above, which HARRIS did.

11.     CERIDIAN is a third-party COBRA plan administrator employed by UAIG to processes COBRA premium payments for UAIG's former employees, who opt to enroll in COBRA following their termination of employment with UAIG.

12.     In this capacity, CERIDIAN acts as UAIG's agent in complying with its COBRA obligations under 29 U.S.C.A. § 1132 *et seq.,* and therefore assumes all contractual and fiduciary obligations due a covered employee under the Plan.

4

13.     Headquartered in Bloomington, Minnesota, CERIDIAN has a regional office located in St. Petersburg, Florida. As a qualified employee with UAIG, HARRIS opted to enroll in a CERIDIAN administered COBRA plan upon his termination of employment with UAIG in May 2007 (the "Plan").

14.     As a covered employee under the Plan, both UAIG and CERIDIAN owed to HARRIS and his family, as beneficiaries, certain contractual and fiduciary duties, including but not limited to the duty (i) to refrain from unilaterally and wrongfully stripping HARRIS of his COBRA benefits, without cause or recourse; (ii) to insure the continuing and uninterrupted coverage of his COBRA benefits at all times during the covered period; and (iii) to abide by the laws governing COBRA coverage under Title 29.

## ALLEGATIONS COMMON TO ALL COUNTS

15.     Prior to working for UAIG, HARRIS was employed for approximately three years with a law firm in Mt. Pleasant, South Carolina.

16.     Formerly a Miami attorney for more than 20-years before moving to South Carolina, HARRIS returned to Miami in January 2007. However, his wife and three children – ages 13, 11 and 8 -- remained behind because they were unable to sell their house -- and are there to this day.

17.     Upon returning to Miami in 2007, HARRIS accepted employment with UAIG. His sole function was to assist UAIG in identifying attorney overbilling and prosecuting attorney fraud in fee applications on UAIG PIP claims. In this capacity, HARRIS was located at a UAIG captive law firm located in Hialeah, Florida.

5

18.     HARRIS remained with UAIG for approximately three months and left UAIG's employment on or about May 11, 2007.

19.     Upon leaving, HARRIS elected to maintain continuing his health insurance coverage through COBRA, as provided by UAIG and administered through CERIDIAN.

20.     The primary reason for wanting to enroll in the Plan was that the insurance provided thereunder covered both HARRIS and his family, even though they lived in separate states.

21.     Finding this type of multi-state coverage for a single family divided by economic realities beyond their control is nearly impossible and cost prohibitive.

22.     To facilitate timely enrollment in the Plan, HARRIS contacted Ms. Judy Neumann, the head of benefits at UAIG, who forwarded all relevant information to CERIDIAN.

23.     She assured HARRIS that he would be receiving a package of materials from CERIDIAN.  (See Exhibit "1").

24.     Sometime after May 22, 2007, CERIDIAN sent to HARRIS a letter stating: "We have been retained by [UAIG] to notify you of your group health care benefits continuation rights." (Exhibit "2").

25.     Enclosed therewith was an "Additional Information" sheet that purports to "**fully explain**" HARRIS' rights under the Plan, even though it does nothing of the sort. Rather, the document is merely CERIDIAN's protocol -- likely distributed to every COBRA qualified employee regardless of whom they worked for -- and is not even aligned with the rights set forth under UAIG's Plan.  In fact, it makes no mention of UAIG whatsoever.

6

26.     Indeed, notwithstanding CERIDIAN's assurance that its information sheet "fully explains" all rights under the Plan, Paragraph L clearly states, "**This notice does not fully describe continuation coverage or other rights under the Plan.**  More information about continuation coverage and your rights under the plan is available in your Summary Plan Description or from you Plan Administrator."  (emphasis added).

27.     Unlike CERIDIAN's information packet, a Summary Plan Description ("SPD") sets forth the contractual rights and duties of the employer and covered employee under a given COBRA plan -- including all notice and plan cancellation provisions pertaining thereto -- and is required by law to be given to an employee who opts to receive COBRA benefits pursuant to 29 U.S.C.A § 1001 *et seq. See Sunderlin, supra,* 235 F.Supp.2d 222 (pursuant to ERISA section allowing civil actions to enjoin acts or practices that violate ERISA, sponsor of long-term disability plan had to provide participant with completed summary plan description (SPD) within certain number of days).

28.     Neither CERIDIAN nor UAIG has ever provided to HARRIS a copy of the SPD, or the Plan Documents, even though by law they are required to do so. *Sunderlin*

29.     Public records indicate that CERIDIAN is a multi-national corporation headquartered in Minnesota, with operations in the United States, Canada and Europe.

30.     Once publicly traded, CERIDIAN is now privately held. Headed by President and CEO, Kathryn Marinello, CERIDIAN primarily provides human resource support to companies wanting to outsource their human resource operations, including the administration of post-employment COBRA plans.

7

31.     Despite its enormous size and sophistication -- and despite the fact that almost every other company in the world that sells goods and services -- including insurance companies and third-party administrators like CERIDIAN -- now allows its customers and clients to pay their bills over the Internet, using debit, credit, check, Paypal and automatic draft transactions -- CERIDIAN imposes on COBRA qualified employees the undue burden of having to make their premium payments through the U.S. Mail.[2]

32.     This archaic, inefficient, overly burdensome, time consuming and paper intensive requirement is a trap for the unwary.

33.     After signing a COBRA election form in May 2007, HARRIS began making his regular monthly premium payments to CERIDIAN in the amount of $1,162.13, in consideration for the COBRA benefits under the Plan. See *Geissal v. Moore Medical Corp.* 524 U.S. 74, 81 (U.S.1998)("The 'applicable premium' is usually the cost to the plan of providing continuation coverage, regardless of who usually pays for the insurance benefit.").

34.     Each month, CERIDIAN would send to HARRIS via regular mail invoices for the premiums due at his residence in South Carolina -- e-mail notices not being available.  Upon receipt of said invoices, HARRIS' wife, Susan, dutifully opened each envelope, wrote a check and timely posted the return payment to CERIDIAN's CobraServe offices in St. Petersburg, FL.

35.     Susan inquired about paying the premiums over the Internet, or establishing up an automatic debit to the HARRIS' checking account, but representatives from CERIDIAN informed her this was impossible -- CERIDIAN only accepted payments by mail -- making its protocol a non-negotiable adhesion contract.

---

[2]  Title 29 makes no mention as to how payments are to be made.

36.     With three children who seem to demand constant medical attention -- two have severe asthma and allergies -- two suffer from learning disabilities requiring medication and counseling -- and all three are active in sports, skate boarding and roughhousing that have left them, on occasion, with cuts, bruises and broken bones requiring trips to the ER -- the HARRISES wisely, consistently and timely have made their COBRA premium payments through the U.S. Mail.  Indeed, with the health of so many lives at stake, the thought of doing otherwise was unthinkable.

37.     Sometime in January, Susan received CERIDIAN's invoice for coverage up to and including January 11, 2008. (See Exhibit "3").

38.     Allowing for a 30-day grace period to pay the premium, HARRIS was required to post a check to CERIDIAN's office in Florida on or before February 11, 2008.

39.     Susan made a check out to CERIDIAN dated February 8, 2008, which she placed in the mailbox in South Carolina on February 11, 2008.

40.     She either inadvertently did so after the mail carrier had made his rounds.  Or the envelope was picked up and post-marked a day later -- February 12, 2008 -- a real possibility in some areas of South Carolina -- like where the HARRISES live -- because the postal service often employs part-time mail carriers, who use their own vehicles to deliver the mail, and the mail could have gotten delayed, misplaced or even left in the carrier's car overnight, before making its way to the post office the next day to be postmarked.

41.     Whatever the case, one James Trimble, CERIDIAN's chief compliance officer in Florida, later informed HARRIS that the he is holding an envelope bearing a postmark of

9

February 12, 2008 -- making it one day late sufficient to terminate coverage -- even though HARRIS has never actually seen the envelope for himself and Trimble has not made it available.

42.    And although HARRIS, as an attorney, truly appreciates the importance of a statute of limitations, the 30-day grace period allowable under 29 U.S.C.A. § 1162 (2)(C), is discretionary and flexible, not mandatory or jurisdictional, as a statute of limitations is ordinarily construed. *See Geissal v. Moore Medical Corp.* 524 U.S. 74, 81 (U.S.1998)("Benefits **may** [not shall] cease if the qualified beneficiary fails to pay the premiums, [under] § 1162(2)(C))(emphasis added).[3]

43.    Further, since neither UAIG nor CERIDIAN has ever sent to HARRIS a copy of the SPD, he has no idea whether a day late postmark is grounds for termination; or whether it is some other date beyond 30-days, as the Plan may provide; or whether the Plan provides for means of payment other than by U.S. mail; or whether HARRIS is entitled to internal due process in the event of wrongful termination caused by excusable neglect.

44.    Whatever the case, neither UAIG nor CERIDIAN can legally terminate HARRIS' benefits under these circumstances, when they never even provided HARRIS with the SPD prior to his enrolling, thus placing him on notice of his rights thereunder, and where CERIDIAN's own documents are, or likely, non-conforming, ambiguous or contradictory.  *See Dobson v. Hartford Financial Services Group, Inc.,* 389 F.3d 386 (2nd Cir. 2004)(in action for benefits, courts have ability to supply implied terms to contracts governed by ERISA.). *See also Mullaly*

---

[3] 29 U.S.C.A. § 1162 (2)(C) defines "Failure to pay premium" as:

The date on which coverage ceases under the plan by reason of a failure to make timely payment of any premium required under the plan with respect to the qualified beneficiary. The payment of any premium (other than any payment referred to in the last sentence of paragraph (3)) shall be considered to be timely if made within 30 days after the date due **or within such longer period as applies to or under the plan.**)(emphasis added).

*v. First Reliance Standard Life Ins. Co.*, 253 F.Supp.2d 279 (D. Conn. 2003)(ambiguities in ERISA plan that court is reviewing de novo are construed in favor of the plan beneficiary).

45.     Accordingly, CERIDIAN's decision to unilaterally terminate HARRIS' coverage in this instance -- based on a day late postmark -- was arbitrary and capricious, especially since HARRIS was left without recourse, remedy or appeal through any available channels at CERIDIAN or UAIG -- which should be prohibited as a matter of public policy where something as vital as COBRA coverage is concerned. *See Buckley v. Metropolitan Life,*115 F.3d 936 (11th Cir.1997)("ERISA does not provide a standard to review decisions of a plan administrator or fiduciary. The Supreme Court has held that a range of standards may apply to benefits determinations under the statute. Accordingly, this court has adopted the following standards for reviewing administrators' plan interpretations: (1) *de novo* where the plan does not grant the administrator discretion, (2) arbitrary and capricious when the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where there is a conflict of interest). (internal citations omitted); *Jett v. Blue Cross and Blue Shield of Alabama, Inc.* 890 F.2d 1137 (11th Cir. 1989)(same).

46.     *See also Washicheck v. The Ultimate Ltd.,* 231 F.R.D. 550 (W.D.Wis.2005)(genuine issue of fact, as to whether former employer and health plan had justification to terminate COBRA coverage for late payment, given statements in Consolidated Omnibus Budget Reconciliation Act (COBRA) notice suggesting that premium might be timely when submitted within 30 days of end of premium period, precluded summary judgment in favor of employer and health plan on ERISA claim for unpaid benefits and damages). *See also Mercek v. Northwest Airlines Corp.,* slip op., 2007 WL 4557153 (S.D.Fla.)(where covered employee

under COBRA plan suffered cancellation of policy after automatic bank draft for premium payment was returned for insufficient funds did not on preclude her from suing for lost benefits sufficient to survive a motion to dismiss).

47.     Based on the February 12th postmark, on February 18th -- six days later -- CERIDIAN mailed to HARRIS a notice -- which he received on or about February 21st -- nine days later -- that CERIDIAN had terminated his COBRA benefits retroactive to January 11, 2008, meaning all doctor visits from January 11, 2008, forward remain uncovered. (See Notice Exhibit "4").

48.     Upon receipt of said notice and the shocking realization that he and his family were left uncovered, HARRIS began calling everyone from the CERIDIAN's CEO, to UAIG's General Counsel, desperately seeking their assistance.

49.     At every turn, representatives at CERIDIAN informed HARRIS that resolution of the matter resided with UAIG, whereas UAIG, in response, informed HARRIS that CERIDIAN had the authority to reconsider the matter.

50.     After awhile, this back-and-forth became a classic case of "who's on first", or "the right hand not knowing what the left hand was doing."  Whatever one calls it, HARRIS and his family had no health insurance coverage and no internal due process, while UAIG and CERIDIAN played hide the ball with the life, health and safety of HARRIS and his family.

51.     Over the course of a week, HARRIS left a dozen or more messages with Kathryn Marinello, desperately seeking her intervention, but never even received the courtesy of a call-back.

12

52.     However, in trying to reach Ms. Marinello, her assistant Sandy revealed to HARRIS CERIDIAN's little secret: that he and his family were not the only ones to have been caught in this trap.

53.     Sandy knew of other families who had had their COBRA benefits wrongfully terminated by CERIDIAN, because they had either moved to new locations, and the forwarding mail was late in delivering to them CERIDIAN's invoices. Or the mail was lost. Or, like in HARRIS' case, the mail was delayed in having envelopes postmarked and returned to CERIDIAN, which seems to happen frequently to people living in rural areas, according to Sandy.

54.     All of this of course could be avoided, Sandy admitted, if CERIDIAN would move into the 21st century, and allow covered employees to pay their premiums on-line, or through automatic debit, rather than forcing them to rely on an archaic, overly burdensome, time consuming and paper intensive method of making premium payments through the mail.

55.     After this exchange, HARRIS was then bounced back to UAIG, where HARRIS left 4 or 5 urgent messages with its General Counsel, Charles Grimsley, who also refused to show HARRIS the courtesy of a return call, even though HARRIS is an attorney and former counsel for UAIG.

56.     Instead, HARRIS received an e-mail from Grimsley informing him that "I do not have any decision making authority in this matter." (See Exhibit "5").

57.     While waiting for Grimsley to return his calls, HARRIS went back to Sandy, who told him to call CERIDIAN's Linda Jandernal in Florida, who in turn told him she would hand the matter over to her compliance department, which would get back to HARRIS later that day.

13

58.     When the call never came, HARRIS got Jandernal back on the line, who put him in touch with a compliance officer named Sandy (not Marinello's assistant).

59.     This Sandy told HARRIS she could do nothing to assist him, because this was UAIG's problem.  Thereafter the matter was referred up the chain to Trimble.

60.     After a week's worth of trying, Trimble informed HARRIS that a postage stamp marked a day late constituted a "qualifying event" under the Plan, resulting in the draconian and irrevocable termination of HARRIS benefits, without any due process right of appeal, remedy, recourse or reinstatement.[4]

61.     All of this despite the fact that HARRIS (i) has no idea whether the Plan defines "qualifying event" as a day late postmark, because he never got the SPD; and (ii) HARRIS manifest every intention of paying his premium, as evidenced by a check dated February 8, 2008

---

[4]   HARRIS is unsure which "qualifying event" Trimble was referring to, because both CERIDIAN's "Additional Information" sheet and 29 U.S.C.A. § 1163 define "qualifying event" as something other than a late postmark:

. . . with respect to any covered employee, any of the following events which, but for the continuation coverage required under this part, would result in the loss of coverage of a qualified beneficiary:

    (1)   The death of the covered employee.

    (2)   The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment.

    (3)   The divorce or legal separation of the covered employee from the employee's spouse.

    (4)   The covered employee becoming entitled to benefits under title XVIII of the Social Security Act [42 U.S.C.A. § 1395 et seq.].

    (5)   A dependent child ceasing to be a dependent child under the generally applicable requirements of the plan.
    (6)   A proceeding in a case under Title 11, commencing on or after July 1, 1986, with respect to the employer from whose employment the covered employee retired at any time.

In the case of an event described in paragraph (6), a loss of coverage includes a substantial elimination of coverage with respect to a qualified beneficiary described in section 1167(3)(C) of this title within one year before or after the date of commencement of the proceeding.

-- **which CERIDIAN held for weeks before returning** -- together with an envelope postmarked a day late by the South Carolina postal service, which HARRIS has yet to see.

62.     Trimble then informed HARRIS that UAIG could reverse the decision, but that CERIDIAN had no discretion in the matter, which seems utterly at odds with its authority to unilaterally terminate HARRIS' benefits as UAIG's agent.

63.     Accordingly, HARRIS contacted Grimsley via e-mail seeking his assistance, who, without giving any reason or justification, merely informed HARRIS that the decision would stand. (See Exhibit "6").

64.     Following this series of events, HARRIS then contacted Senator Bill Nelson's office, who in turn has referred the matter over to the U.S. Department of Labor for its investigation.  (See Exhibit "7").

65.     George Kargiolakis, an attorney for the Department of Labor investigating this matter, contacted HARRIS and expressed his dismay, not only at the burdensome manner in which CERIDIAN requires its Plan participants to pay their premiums through the mail, but also the way in which CERIDIAN and UAIG have refused to give HARRIS the benefit of the doubt by reinstating his coverage for the remaining nine months of coverage, based on HARRIS' clear intent to comply timely with the payment of premiums, which CERIDIAN and UAIG clearly have the discretion to do.  The DOL investigation remains open.

66.     In the meantime, HARRIS is awaiting coverage through his PA at nearly twice the cost, and all medical expenses incurred during the gap period, are now sole responsibility of HARRIS, including a recent trip to the emergency room, which will likely run into the thousands of dollars.

67.     Similarly, until all deductibles are met, HARRIS is unable to obtain prescription medications for his children, his wife or himself, for anything less than the full retail cost of the medication.  For example, asthma medications required for his children's survival cost hundreds of dollars, and overall monthly uninsured prescriptions for the HARRIS family may cost more than a thousand dollars before full coverage is reinstated.

68.     Failure to enjoin UAIG and CERIDIAN's continued denial of HARRIS' COBRA coverage, retroactive to January 11, 2008, and continuing until this matter may be resolved by the parties or tried by a jury, will place the life, health and safety of HARRIS and his family at risk of immediate and irreparable harm.

69.     By comparison, issuing a preliminary injunction in this instance will place little if any burden or cost on UAIG or CERIDIAN. *See Geissal, supra,* 524 U.S. 74, 81 ("The 'applicable premium' is usually the cost to the plan of providing continuation coverage, regardless of who usually pays for the insurance benefit.").

70.     HARRIS is prepared to post a bond if necessary pursuant to Rule 65(a), Fed.R.Civ.P.

## COUNT I

## PRELIMINARY INJUNCTION AGAINST UAIG AND CERIDIAN

71.     Plaintiff realleges and restates each and every allegation set forth in paragraphs 1 though 70 above as if fully set forth herein.

72.     HARRIS requests this court to enjoin UAIG and CERIDIAN from further denying him duly entitled his COBRA benefits, retroactive to January 11, 2008, and continuing

until this matter may be resolved by the parties, tried before a jury, or HARRIS' benefits naturally terminate according to the Plan, which ever is earliest.

73.    Currently, HARRIS is awaiting group coverage through his P.A. at nearly twice the cost.

74.    In the interim, HARRIS is unable to have any pharmacy fill life sustaining prescription medications for his children, his wife or himself, for anything less than the full retail cost of the medication.  For example, some asthma medications required by his children to live cost hundreds of dollars and overall monthly uninsured prescriptions for the HARRIS family may exceed a thousand dollars.

75.    Failure to enjoin UAIG's and CERIDIAN's continued denial of HARRIS' COBRA coverage in this matter will place the life, health and safety of HARRIS and his family at risk of immediate and irreparable harm.

76.    By comparison, enjoining UAIG and CERIDIAN will burden or cost them little if anything.

77.    HARRIS is prepared to post a bond if necessary pursuant to Rule 65(a), Fed.R.Civ.P.

WHEREFORE, Plaintiff demands this Honorable Court to enter a preliminary injunction against UAIG and CERIDIAN further enjoining them from denying HARRIS his COBRA benefits, retroactive to January 11, 2008, until this matter may be settled by the parties, tried by a jury, or HARRIS' COBRA benefits naturally expire under the Plan, which ever is earliest.

## COUNT II

### BREACH OF FIDUCIARY DUTIES AGAINST UAIG AND CERIDIAN

78.     Plaintiff realleges and restates each and every allegation set forth in paragraphs 1 though 70 above as if fully set forth herein.

79.     At all times relevant, UAIG and CERIDIAN owed to HARRIS a fiduciary duty to insure that his COBRA coverage would remain in effect continuously and uninterrupted.

80.     UAIG and CERIDIAN willfully, wantonly, recklessly and negligently breached this duty by unilaterally terminating HARRIS' COBRA coverage without cause or recourse.

81.     As a result of said breach, HARRIS has been damaged.

        WHEREFORE, Plaintiff demands this Honorable Court enter a judgment against defendants for any and all compensatory, contractual, consequential, economic, out-of-pocket, and statutory damages allowable by law, including without limitation, attorney's fees and costs, together with all other damages this court deems fair and just.

## COUNT III

### BREACH OF CONTRACT AGAINST UAIG AND CERIDIAN

82.     Plaintiff realleges and restates each and every allegation set forth in paragraphs 1 though 70 above as if fully set forth herein.

83.     Upon information and belief, Defendants failed to supply HARRIS with summary Plan documents required by law.

84.     Further, Defendants are bound by contract to provide HARRIS with COBRA coverage without interruption for the statutory minimum coverage of 18 months.

18

85.    Defendants breached this agreement by unilaterally terminating HARRIS' COBRA benefits without cause.

86.    As a result of said breach, HARRIS has been damaged.

WHEREFORE, Plaintiff demands this Honorable Court enter a judgment against defendants for any and all contractual, economic, out-of-pocket, compensatory, consequential and statutory damages allowable by law, including without limitation, attorney's fees and costs, together with all other damages this court deems fair and just.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all counts so triable.

**VERIFICATION**

I hereby verify that the allegations set forth herein are true and correct to the best of my knowledge and belief.

J.B. Harris, Esq.

## **CERTIFICATE OF SERVICE**

Pursuant to Rule 65(a), Fed.R.Civ.Pro., I hereby certify that a true and correct copy of

this Complaint was served on Defendants' Registered Agents this March 18, 2008 at:

Charles J. Grimsley, Esq.  
General Counsel  
United Automobile Insurance Group, Inc.  
3909 N.E. 163rd St. Ste. 304  
N. Miami Beach, FL 33160

NRAI Services, Inc.  
2731 Executive Park Dr.  
Suite 4 Weston, FL 33331

**Agent for service of process for Defendant, UAIG**

**Agent for service of process for Defendant, CERIDIAN CORP.**

J.B. Harris & Assoc., P.A.

By: _____

J.B. HARRIS (FBN 495034)  
2655 Ponce De Leon Blvd., Suite 320  
Coral Gables, FL 33134  
Ph:    305-444-6121  
Fax:   305-444-5508  
e-mail: jbharrisesq@hotmail.com

20

## J.B. Harris, P.A.

| | |
|---|---|
| **From:** | Judith Neumann [jneumann@uaig.net] |
| **Sent:** | Monday, May 21, 2007 12:00 PM |
| **To:** | JB Harris |
| **Subject:** | RE: COBRA |
| **Attachments:** | Medical Claim Form - Cigna.pdf; Dental Claim Form - Cigna.pdf |

I have provided notification to our COBRA administrator of the termination of your benefits as of 5/11/07.  It normally takes about 5 business days to get the packet mailed to you.  If you prefer to have them fax the documents to you to save time, you may contact them <u>tomorrow</u> (since it takes 24 hours to prepare them and the data was just entered a few minutes ago).

```
COBRASERVE NATIONAL SERVICE CENTER
3201 34TH STREET SOUTH
ST. PETERSBURG, FL  33711-3828
PHONE: 800-488-8757 (THEN OPTION #2)
FAX: 727-865-3648
UNITED AUTO ACCOUNT NO. 651037280
```

### COBRA COSTS FOR 2007

| Coverage Level | Open Access COBRA Rate | Dental COBRA |
|---|---|---|
| EE Only | $337.19 | $25.97 |
| EE+Child(ren) | $606.95 | $46.76 |
| EE+Spouse | $758.69 | $58.44 |
| EE+Family | $1,079.02 | $83.11 |

Let me know if you need my assistance, or have your wife call me with any questions.  I am also attaching a medical and a dental claim form in the event you incur any expenses while waiting for the COBRA enrollment to process.

Judy
Ext. 32762

```
-----Original Message-----
From: JB Harris [mailto:jbharrisesq@hotmail.com]
Sent: Monday, May 21, 2007 10:15 AM
To: Pedro Gomez; Judith Neumann
Subject:
```

I have left the employment of Mr. Lidsky and my severance with him expired with the last paycheck.  Please forward to me at the below address all necessary COBRA forms. Thank you.

J.B. Harris, P.A.

# EXHIBIT "1"

3/17/2008

Employer: UNITED AUTO INSURANCE GROUP
Qualifying Event: TERMINATION OF EMPLOYMENT

```
******* IMPORTANT NOTICE *******
```

JONATHAN B. HARRIS & SUSAN HARRIS & Eligible Dependents
2555 PONCE DE LEON BLVD
SUITE 320
MIAMI, FL  33134-6010

| | |
|---|---|
| Date of Notice | : 05/22/07 |
| Qualifying Event | : 05/11/07 |
| Benefits Termination | : 05/11/07 |
| Election Rights Expire: | 07/21/07 |

ID: NC-23876728

Dear JONATHAN B. HARRIS & SUSAN HARRIS & Eligible Dependents:

We have been retained by the above named employer to notify you of your group health care benefits continuation rights. These rights are fully explained on the enclosed "Additional Information" sheet.

If you elect to continue coverage, and if you meet all other requirements explained on the enclosed information sheet, your continuation coverage will begin on 05/12/07. Your right to elect continuation coverage expires on 07/21/07. If you wish to elect coverage, please complete and return the enclosed election form.

The premium rates and plan code for your COBRA continuation coverages are shown below. Incomplete elections will be treated as an election for the continuation coverage as offered.

| Coverage | Individual Plan Monthly Code | Cost | Family Plan Monthly Code | Cost | Indiv&Spouse Plan Monthly Code | Cost | Prnt&Child Plan Monthly Code | Cost | Prnt&Chldrn Plan Monthly Code | Cost |
|---|---|---|---|---|---|---|---|---|---|---|
| *All Coverages | A1 | 363.16 | A3 | 1162.13 | A9 | 817.13 | A14 | 653.71 | A15 | 653.71 |
| Medical - CIGNA - OPEN ACCESS PLUS | M1 | 337.19 | M3 | 1079.02 | M9 | 758.69 | M14 | 606.95 | M15 | 606.95 |
| Dental  - CIGNA DENTAL | D1 | 25.97 | D3 | 83.11 | D9 | 58.44 | D14 | 46.76 | D15 | 46.76 |
| *All Coverages = Medical, Dental | | | | | | | | | | |



EXHIBIT "2"



CobraServ National Service Ctr   3201 34th Street South St. Petersburg, FL 33711  800-877-7994

> Este documento trata sobre beneficios muy importantes de la ley COBRA para usted.
> Para ayuda en español llamar al 800-877-7994, opcion # 2.

## What is COBRA?
COBRA is a Federal Law offering an opportunity to temporarily continue the same group benefits after your group coverage has terminated for certain reasons.

## Who is Ceridian?
Ceridian is a COBRA administrator for participating employers and insurers. Ceridian assists participating employers and insurers in complying with the Federal COBRA guidelines in regard to their group health plans. Ceridian is not an insurance company.

## What if I am on Medicare right now?
If you enrolled in Medicare prior to electing COBRA, then you may continue both coverages.

## When does COBRA coverage become effective?
COBRA is effective one day after your benefits termination date, pending the receipt of a timely election and payment.

## How long will COBRA continue?
The length of your COBRA continuation coverage (18, 29, or 36 months) will depend on the Qualifying Event which is further defined in the "Additional Information" on the next pages as long as continued eligibility requirements are met. However, in most cases, if applicable, your (Health Care) Flexible Spending Account will end on the last day of the Plan year in which the qualifying event occurred.

## When will my health plan and/or insurer show me active for benefits?
Once Ceridian receives and processes your election and full payment, Ceridian will then forward your information. Your health plan and/or insurer will update your eligibility which may take up to 30 days from receipt of the payment.

## What if I need medical services before my coverage is effective?
You may be required to pay for services out of pocket during your re-enrollment period. If so, you may contact your health plan and/or insurer for possible reimbursement procedures once your coverage is effective.

## Who pays for claims incurred?
Your health plan and/or insurer, i.e., Blue Cross Blue Shield, CIGNA, United Healthcare, etc. *Ceridian is not an insurance company and does not pay claims.*

## How do I get my claims paid?
You must submit any claims directly to your health plan and/or insurer. Claims incurred can only be paid if you have timely made your COBRA premium payments through the period in which services were rendered.

## Will my coverage change?
You will be offered the same coverage you had the day before you lost your benefits, subject to changes made to the group health plan for employees who have not had a qualifying event.

## Will I receive new cards from the health plan or insurer?
You may need a new card if you are a dependent losing coverage. You will need to contact your health plan and/or insurer for additional cards. *Ceridian does not issue insurance cards.*

## How can I elect COBRA?
You can elect by the attached form, automated phone system, or Web site. For details, please see page titled "You Have Options."

## What is a timely payment?
To be considered a timely payment, your full premium payment must be either postmarked by the U.S. Postal Service on or before the grace period expiration date and received by Ceridian or sent by an express delivery service (such as Federal Express, UPS etc.) with proof of date sent from that service on or before the applicable grace period expiration date and received by Ceridian.

## Why do I have a "Due" date and a "Grace" date?
Federal law allows you a grace period following your due date to make your payment. If you make a payment later than the first day of the coverage period to which it applies, but before the grace date for the coverage period, your coverage under the health plan may be suspended as of the first day of the coverage period and then retroactively reinstated (going back to the first day of the coverage period) when the periodic payment is received. This means that any claim you submit for benefits while your coverage is suspended may be denied and may have to be resubmitted once your coverage is reinstated.

## What if I do not receive an invoice?
Monthly invoices are reminders sent around the 20th of each month that show the premium amount for the next due date with corresponding grace period end date, as well as any periods of coverage for which Ceridian has not received a payment. Please note the respective grace period end date for each payment due. Remember, however, that you are responsible for payment of the premium on time even if you don't receive the invoice. Simply send your payment to Ceridian with your Account ID# and/or Social Security number noted on the check. You may log onto www.ceridian-benefits.com to obtain information regarding payments due.

## How do I make my payments?
Ceridian accepts personal checks, money orders, or cashier checks by mail. *No cash or credit card payments will be accepted.*

## What is alternative coverage?
Your sponsoring employer may provide you with a right to elect alternative group health coverage for a period of time instead of the COBRA continuation coverage described in this Notice. If you elect this alternative coverage, you will lose all rights to the continuation coverage described in this Notice. You should also note that if you enroll in the alternative group health coverage you lose your right under federal law to purchase individual health insurance that does not impose any pre-existing condition limitations when your alternative group health coverage ends. Please review your options carefully before making your final decision.
**Please refer to the "Additional Information" on the next two pages for more detailed answers about COBRA.**

Case 1:08-cv-00701-OWW-DLB Document 1 Filed 06/03/2008 Page 24 of 33

ADDITIONAL INFORMATION TO ACCOMPANY ENCLOSED IMPORTANT NOTICE
CONCERNING COVERAGE CONTINUATION RIGHTS (COBRA) (Continued)

Este documento trata sobre beneficios muy importantes de la ley COBRA para usted. Para ayuda en español llamar al 800-877-7994, opcion # 2.

(4) - Delivered in person to a Ceridian representative during normal business hours at its offices on or before the Election Rights Expiration Date shown on the enclosed "Important Notice".

To elect continuation coverage, you must complete the Election Form and furnish it according to the directions on the form. Each qualified beneficiary has a separate right to elect continuation coverage. For example, the employee's spouse may elect continuation coverage even if the employee does not. Continuation coverage may be elected for only one, several, or for all dependent children who are qualified beneficiaries. A parent may elect to continue coverage on behalf of any dependent children. The employee or the employee's spouse can elect continuation coverage on behalf of all of the qualified beneficiaries.

In considering whether to elect continuation coverage, you should take into account that a failure to continue your group health coverage will affect your future rights under federal law. First, you can lose the right to avoid having pre-existing condition exclusions applied to you by other group health plans if you have more than a 63 day gap in health coverage, and election of continuation coverage may help you not have such a gap. Second, you will lose the guaranteed right to purchase individual health insurance policies that do not impose such pre-existing condition exclusions if you do not get continuation coverage for the maximum time available to you. Finally, you should take into account that you have special enrollment rights under federal law. You have the right to request special enrollment in another group health plan for which you are otherwise eligible (such as a plan sponsored by your spouse's employer) within 30 days after your group health coverage ends because of the qualifying event listed above. You will also have the same special enrollment right at the end of continuation coverage if you get continuation coverage for the maximum time available to you.

### G) How much does it cost to continue coverage?

Generally, each qualified beneficiary may be required to pay the entire cost of continuation coverage. The amount a qualified beneficiary may be required to pay may not exceed 102 percent (or, in the case of an extension of continuation coverage due to a disability, 150 percent) of the cost to the group health plan (including both employer and employee contributions) for coverage of a similarly situated Plan participant or beneficiary who is not receiving continuation coverage. The required payment for each continuation coverage option for each option is described in the "Important Notice." The amount charged for continuation coverage may be adjusted due to changes in coverage. In addition, even in the absence of any changes in coverage, amounts charged for continuation coverage may change on a yearly basis or as otherwise permitted by applicable law.

The Trade Act of 2002 created a new tax credit for certain individuals who become eligible for trade adjustment assistance and for certain retired employees who are receiving pension payments from the Pension Benefit Guaranty Corporation (PBGC) (eligible individuals). Under the new tax provisions, eligible individuals can either take a tax credit or get advance payment of 65 percent of premiums paid for qualified health insurance, including continuation coverage. If you have questions about these new tax provisions, you may call the Health Coverage Tax Credit Customer Center Center toll-free at 866-628-4282 (TTD/TTY callers may call toll-free at 866-626-4282) or go to this Web site: http://www.irs.ustreas.gov  Keyword: HCTC

### H) When does COBRA continuation coverage begin?

Continuation coverage begins on the day after the date that coverage would otherwise terminate, only if the election is timely made, and all other eligibility requirements are satisfied.

### I) When are premium payments due?

If you elect continuation coverage, you do not have to send any payment with the Election Form. However, you must make your first payment for continuation coverage not later than 45 days after the date of your election (this means within 45 days after the date your Election Form is postmarked, if mailed). Upon receipt of your election by Ceridian, you will be billed for the first payment for continuation coverage, which is the amount due from the date your group health benefits terminated through the current month. If you do not pay that amount in full within 45 days after the date of your election, you will lose all continuation coverage rights under the Plan and your coverage will terminate. You are responsible for making sure that the amount of your first payment is correct. You may contact Ceridian to confirm the correct amount of your payment.

After you make your first payment for continuation coverage, you will be required to make monthly payments for each subsequent coverage period. The monthly invoice indicates a grace period measured from the due date for each monthly premium during which payment may be made. The grace period is defined by the group health plan (usually 30 days). As noted, Ceridian will send monthly invoices for each coverage period. However, remember that you are responsible for paying the full premium on time even if you do not get an invoice. If you make a periodic payment on or before the first day of the coverage period to which it applies (the due date), your coverage under

the Plan will continue for that coverage period without any break. Although periodic payments are due on the first day of each coverage period, you will be given a grace period (usually 30 days) to make each periodic payment. The grace period is defined by the group health plan. Your continuation coverage will be provided for each coverage period as long as payment for that coverage period is made before the end of the grace period for that payment. However, if you pay a periodic payment later than the first day of the coverage period to which it applies, but before the end of the grace period for the coverage period, your coverage under the Plan may be suspended as of the first day of the coverage period and then retroactively reinstated (going back to the first day of the coverage period) when the periodic payment is received. This means that any claim you submit for benefits while your coverage is suspended may be denied and may have to be resubmitted once your coverage is reinstated.

Your first payment and all periodic payments for continuation coverage should be made payable to "Ceridian COBRA Services" and should be sent to Ceridian. Include the name and Acct ID#/Social Security number of the person covered on each check. Monthly invoices are sent approximately 10 days before the premium due date. If full payment is not timely made (see below) on or before each grace period expiration date, coverage will be cancelled and you will lose all rights to continuation coverage under the Plan. If you wish to send a check with your election, please ensure the check is signed, properly dated, made payable to "Ceridian COBRA Services", and written in the total amount required to fully pay your first premium (as described above).

### J) What is a Timely Payment?

To be considered a timely payment, your premium payment must be either:

(1) Postmarked by the U.S. Postal Service on or before the applicable grace period expiration date, and received by Ceridian, or

(2) Sent by an express delivery service (such as Federal Express, UPS, etc.) — with proof of date sent from that service on or before the applicable grace period expiration date, and received by Ceridian, or

(3) Delivered in person to a Ceridian representative during normal business hours at its offices on or before the grace period expiration date.

Late payments cannot be accepted and will be returned, resulting in cancellation of your coverage with no possibility for reinstatement.

Note 3: Your premium is due on the "due date" shown on your invoice. If you wait until the end of the grace period to pay, you risk not having sufficient time to correct errors which may or may not be within your control (such as unsigned checks, incorrect payment amounts, premiums sent to the wrong address, or late/missed pickups by the U.S. Postal Service). In such cases, your coverage will be cancelled with no possibility of reinstatement. For these reasons, we recommend that you send in your premium payment(s) prior to the "due date."

### K) When will claims become payable?

Claims become payable for each period of coverage only after a premium payment for the coverage period has been made. Claims payment may be delayed and prescription cards not reactivated for a period of up to 30 days because of the time required to process your initial premium payments by Ceridian and to notify both your sponsoring employer and your health plan and/or insurer.

DO NOT SEND CLAIMS TO CERIDIAN. Ceridian does not pay claims. If you have any questions about claims incurred within 30 days of receipt of your initial premium payment, please contact your sponsoring employer. Otherwise, contact the claims office indicated on your claims form. If premium payments are not made in a timely manner, coverage will be cancelled retroactively, and claims incurred during the period for which premiums were not paid will not be paid by the health plan or insurer.

### L) For More Information

This notice does not fully describe continuation coverage or other rights under the Plan. More information about continuation coverage and your rights under the Plan is available in your Summary Plan Description or from the Plan Administrator. If you have questions concerning your COBRA continuation coverage rights or information in this Notice, contact Ceridian at the address or number listed in this document. For a copy of your Summary Plan Description, or if you have questions concerning your Plan, contact the Plan Administrator or your sponsoring employer.

For more information about your rights under ERISA, including COBRA, the Health Insurance Portability and Accountability Act (HIPAA), and other laws affecting group health plans, contact the U.S. Department of Labor's Employee Benefits Security Administration (EBSA) in your area or visit the EBSA Web site at www.dol.gov/ebsa. (Addresses and phone numbers of Regional and District EBSA Offices are available through EBSA's Web site.)

### M) Keep Your Plan Informed of Address Changes

In order to protect your family's rights, you should keep the Plan Administrator and Ceridian informed of any changes in the addresses of family members. You should also keep a copy, for your records, of any notices you send to either the Plan Administrator or Ceridian.

ADDITIONAL INFORMATION TO ACCOMPANY ENCLOSED IMPORTANT NOTICE

## CONCERNING COVERAGE CONTINUATION RIGHTS (COBRA)

Este documento trata sobre beneficios muy importantes de la ley COBRA para usted. Para ayuda en español llamar al 800-877-7994, opcion # 2.

### I) What is continuation coverage?

Federal law [Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA)], as amended, requires that most group health plans (including this Plan) give employees and their families the opportunity to temporarily continue their health care coverage when there is a "qualifying event" that would result in a loss of coverage under an employer's plan. Depending on the type of qualifying event, "qualified beneficiaries" can include the employee (or retired employee) covered under the group health plan, the covered employee's spouse, and the dependent children of the covered employee.

Continuation coverage is the same coverage that the Plan gives to other participants or beneficiaries under the Plan who are not receiving continuation coverage. Each qualified beneficiary who elects continuation coverage will have the same rights under the Plan as other participants or beneficiaries covered under the Plan including, if applicable, open enrollment and special enrollment rights.

IMPORTANT: If a qualified beneficiary elects to continue coverage for himself/herself and/or any dependent children who are qualified beneficiaries as described in Section E below, you can ELECT BY NET, ELECT BY PHONE, or send the COBRA Election Form included in this package. If you send the Election Form, it must be completed, signed, and sent to Ceridian, at the address provided on the Form, within 60 days of the date coverage terminates or the date of the enclosed "Important Notice," whichever is later, and received by Ceridian. If a qualified beneficiary does not ELECT BY NET, ELECT BY PHONE, or send the Election Form to Ceridian within the 60 day time period allowed by Law, the qualified beneficiary will lose rights to continue coverage. A qualified beneficiary may reject COBRA continuation coverage before the election expiration date, and may change their mind as long as a completed Election Form is furnished before the election expiration date. However, by changing their mind after first rejecting COBRA continuation coverage, COBRA continuation coverage will begin on the date the completed Election Form is sent unless your sponsoring employer's plan describes otherwise.

*Note 1:* If you are acting on behalf of an incompetent beneficiary, call Ceridian for assistance.
*Note 2:* Some states offer financial aid to help certain individuals pay for COBRA coverage. Contact your appropriate state agency regarding availability and eligibility requirements.

### B) Who is a Qualified Beneficiary?

A qualified beneficiary is any employee, former employee, spouse, or dependent child who was covered under the Plan on the day before the Qualifying Event date shown on the enclosed "Important Notice." The definition includes a child born to or placed for adoption with a covered employee during the period of COBRA coverage. A child of the covered employee who is receiving benefits under the Plan pursuant to a Qualified Medical Child Support Order (QMCSO) received by the Plan Administrator during the covered employee's period of employment with the employer is entitled to the same rights under COBRA as a dependent child of the covered employee, regardless of whether that child would otherwise be considered a dependent.

### C) What is a Qualifying Event?

A Qualifying Event is any of the following events which would cause an employee, former employee, covered spouse, or covered dependent child to lose coverage under the employer's group health plan. These events include:

1) Termination of employment (including voluntary resignation, involuntary termination, retirement, or layoff) except for termination due to gross misconduct;
2) Reduction of work hours (includes work stoppage [strike] or employee begins leave of absence);
3) Death of the employee or retired employee;
4) Divorce or legal separation from covered employee; if an employee cancels coverage for his or her spouse in anticipation of a divorce (or legal separation), and a divorce (or legal separation) later occurs, then the divorce (or legal separation) may be considered a qualifying event even though the ex-spouse lost coverage earlier. If the ex-spouse notifies the administrator within 60 days after the divorce (or legal separation) and can establish that the employee canceled the coverage earlier in anticipation of the divorce (or legal separation), then COBRA coverage may be available for the period after the divorce (or legal separation).
5) Ineligibility of dependent child, due to Plan eligibility definitions;
6) When dependents would lose coverage due to employee/retiree becoming entitled to Medicare;
7) When a retiree, spouse or child of a retiree loses coverage within one year before or after the commencement of proceedings under Title 11 (bankruptcy), United States Code by the sponsoring employer.

### D) How long may coverage be continued?

When the qualifying event is the death of the employee, the employee's or retiree's entitlement to Medicare benefits (under Part A, Part B, or both), your divorce or legal separation, or a dependent child's losing eligibility as a dependent child, COBRA continuation coverage lasts for up to a total of 36 months. When the qualifying event is the end of employment or reduction of the employee's hours of employment, COBRA continuation coverage generally lasts for only up to a total of 18 months. However, if

the qualifying event is the end of employment or reduction of the employee's hours of employment, and the employee became entitled to Medicare benefits less than 18 months before the qualifying event, COBRA continuation coverage for qualified beneficiaries other than the employee lasts until 36 months after the date of Medicare entitlement. For example, if a covered employee becomes entitled to Medicare 8 months before the date on which his/her employment terminates, COBRA continuation coverage for his/her spouse and children can last up to 36 months after the date of Medicare entitlement, which is equal to 28 months after the date of the qualifying event (36 months minus 8 months).

There are two ways in which an 18 month period of COBRA continuation coverage can be extended:

#### Disability extension of 18 month period of continuation coverage

If you or any other qualified beneficiary in your family who is receiving 18 months of continuation coverage is determined by the Social Security Administration to be disabled and you notify Ceridian in writing in a timely fashion, you and your entire family may be entitled to receive an additional 11 months of COBRA continuation coverage for a total maximum of 29 months. The disability would have to have started at some time before the 60th day of COBRA continuation coverage and must last at least until the end of the 18 month period of continuation coverage. The qualified beneficiary must provide the written determination of disability from the Social Security Administration to Ceridian within 60 days of the latest of the date of the disability determination by the Social Security Administration, the date of the initial qualifying event or the benefit termination date due to the initial qualifying event; and prior to the end of the 18 month COBRA continuation period. You will be required to pay up to 150 percent of the group rate during the 11 month extension. If the qualified beneficiary is determined by the Social Security Administration to no longer be disabled, you must notify Ceridian of that fact within 30 days after Social Security's determination.

#### Second qualifying event extension of 18 month period of continuation coverage

If your family experiences another qualifying event while receiving 18 months of COBRA continuation coverage, the spouse and dependent children in your family can get up to 18 additional months of COBRA continuation coverage, for a maximum of 36 months, if notice of the second qualifying event is properly given in writing to Ceridian within the later of 60 days of either the event or the date the qualified beneficiary loses (or would lose) coverage under the Plan as a result of the event. This extension may be available to the spouse and any dependent children receiving continuation coverage if the employee or former employee dies, becomes entitled to Medicare benefits (under Part A, Part B, or both), gets divorced or legally separated, or if the dependent child stops being eligible under the Plan as a dependent child, but only if the event would have caused the spouse or dependent child to lose coverage under the Plan had the first qualifying event not occurred.

However, despite the above, continuation coverage will end earlier than the expiration of the applicable 18, 29 or 36 month period if any one of the following events occurs: The continuant fails to pay the required premium in a timely manner; the continuant becomes entitled to Medicare (under Part A, Part B, or both) after electing continuation coverage; the group health coverage provided to the continuant is terminated and the sponsoring employer is not required by COBRA to provide other group health coverage that it maintains, if under another group health plan (as an employee or otherwise) which does not contain any exclusion or limitation with respect to any pre-existing condition of the continuant. Continuation coverage may also be terminated for any reason the Plan would terminate coverage of a participant or beneficiary not receiving continuation coverage (such as fraud).

You do not have to prove insurability to be entitled to continuation coverage. However, continuation coverage is provided subject to your (and your family members') eligibility for coverage under the Plan. Your sponsoring employer and the insurer(s) (if applicable) reserve the right to terminate continuation coverage retroactively if you (or a member of your family) are determined to be ineligible for coverage. Once your continuation coverage terminates for any reason, it cannot be reinstated.

### E) What coverage(s) may be continued?

Qualified beneficiaries may continue only those group health coverages that were in effect on the day before the Qualifying Event. The coverage(s) available is(are) shown on the enclosed "Important Notice."

### F) What is a Timely Election?

To be considered timely, your election must be either:
(1) Successfully processed using ELECT BY NET or ELECT BY PHONE on or before the Election Rights Expiration Date shown on the enclosed "Important Notice," or
(2) Postmarked by the U.S. Postal Service on or before the Election Rights Expiration Date shown on the enclosed "Important Notice," and received by Ceridian, or
(3) Sent by an Express Delivery Service (such as Federal Express, UPS, etc.) with proof of date sent from that service on or before the Election Rights Expiration Date shown on the enclosed "Important Notice," and received by Ceridian, or

# You Have Options...

## Questions? Call Ceridian at:
### 800-877-7994

## Option #1 - ELECT BY NET

- Log onto our Web site at www.ceridian-benefits.com
- Enter your login name. If this is your initial login, please enter your Social Security number (SSN) with the dashes (XXX-XX-XXXX) as your login name.
- Enter your PIN number. If this is your initial login, enter the last 4 digits of your SSN backwards as your PIN.
- Follow the easy instructions.

> **IMPORTANT:**
> Do Not Submit the
> enclosed Election Form if you
> ELECT BY NET or
> ELECT BY PHONE.

## Option #2 - ELECT BY PHONE 800-877-7994

If you do not have access to a computer or wish to avoid completing the accompanying COBRA Election Form, you may call... and Elect By Phone!

During the Election Process...you may be prompted to provide dependent information using the Two-Key method as described below:

- Press two keys for each letter of the first name. The first key is the letter you wish to enter.

Take a moment to list your dependents and their keypad equivalents before you call:

| Name | |
| --- | --- |
| Keypad | |
| Name | |
| Keypad | |
| Name | |
| Keypad | |

**TWO-KEY ENTRY**

| 1 | ABC 2 | DEF 3 |
| --- | --- | --- |
| GHI 4 | JKL 5 | MNO 6 |
| PRS 7 | TUV 8 | WXY 9 |
| * | OPER 0 | # |

Example: Mary needs to continue coverage for her son, Jon, as a dependent in her health care coverage.

For the letter J; ...... 51
for the letter O; ...... 63
for the letter N; ...... 62
end with the # key.....#

**KEYPAD CHART**

| A = 21 | N = 62 |
| --- | --- |
| B = 22 | O = 63 |
| C = 23 | P = 71 |
| D = 31 | Q = 01 |
| E = 32 | R = 72 |
| F = 33 | S = 73 |
| G = 41 | T = 81 |
| H = 42 | U = 82 |
| I = 43 | V = 83 |
| J = 51 | W = 91 |
| K = 52 | X = 92 |
| L = 53 | Y = 93 |
| M = 61 | Z = 02 |

| space | = 11 |
| --- | --- |
| hyphen | = 12 |
| apostrophe | = 13 |

*Please Note:*
Two numbers must be entered for each letter.

## Option #3 - ELECT BY PAPER (Form)

Please complete the form on the next page to "Elect By Paper."
Mail the form to the address indicated on the Election Form.

---

**ADDITIONAL INFORMATION: Following are a few additional details regarding ELECT BY NET and ELECT BY PHONE ...**

- ELECT BY NET requires either Microsoft Internet Explorer software, version 5.0 or higher or Netscape 6.0 or higher

- ELECT BY NET and ELECT BY PHONE have been programmed to NOT accept an election within 2 days of the COBRA election expiration date.

  If you are within 2 days of the COBRA expiration date, you must fill out and mail in your Election Form.

- ELECT BY PHONE requires that you currently reside at the same address as shown on the COBRA Notification letter

and you want exactly the same coverage(s) for the same covered dependents that were in effect the day before your Qualifying Event. This same coverage includes Flexible Spending Account, if you have one.

- There are a few other rare instances when ELECT BY NET and ELECT BY PHONE may direct you to fill out and send in your Election Form.

- Even if your election by the Internet or telephone is successful, we recommend you keep your COBRA Election Form until you receive an invoice (approximately 3-5 days) confirming your election.



**COBRA Continuation Services**

➡️ IMPORTANT! If you used *ELECT BY NET* or *ELECT BY PHONE* to continue your coverage, DO NOT send this form.

# CONTINUATION OF GROUP HEALTH COVERAGE ELECTION AGREEMENT (COBRA)

## SECTION 1: INDIVIDUAL'S DATA

- Please print or type clearly.
- *You will need the enclosed "Important Notice" to complete specific sections of this form (# 8, #10). If you do not make a selection in #10, your coverage will default to the Plan as offered.*
- If you need help acting on behalf of an incompetent Beneficiary, contact Ceridian at 800-877-7994.

1) Name of Individual for whom this Coverage applies

2) Gender (check one)
☐ (M)ale  ☐ (F)emale

3) Social Security Number
☐☐☐ – ☐☐ – ☐☐☐☐

4) Date of Birth (month, day, year)
☐☐ ☐☐ ☐☐☐☐
M M D D Y Y Y Y

5a) Individual's Mailing Address (include apartment number if applicable)

5b) City

5c) State          5d) Zip Code

6) Individual's daytime telephone number (include Area Code)
☐☐☐ – ☐☐☐ – ☐☐☐☐

7) Relationship to employee/former employee (check one)
☐ (S)elf
☐ (Sp)ouse/former spouse
☐ (D)ependent child/former dependent child

8) Name of Company (sponsoring employer/former employer) from which this continued coverage is being obtained exactly as it appears on your *"Important Notice."*

9) If individual is a dependent, fill in employee's/former employee's name and Social Security Number.
Name (last, first, mi)
Employee SSN ☐☐☐ – ☐☐ – ☐☐☐☐

---

**10) IMPORTANT!** Fill in Plan Code(s) corresponding to the COBRA continuation coverage elected. Note: Plan Code(s) must be entered exactly as they appear on your *"Important Notice."*

Plan Code(s) Elected:_____
*If you do not make a coverage selection, your coverage will default to the Plan as offered.*

11) If applicable, are you electing to continue a Flexible Spending Account (FSA)?
☐ No          ☐ Yes

## SECTION 2: DEPENDENT'S DATA

To continue to cover individual's previously covered eligible dependents, complete this section. This information is necessary for issuance of a *Certificate of Creditable Coverage*. List only the dependents who were covered on the group health plan and wish to continue to be covered. If dependent(s) wish to make independent elections, they must complete a separate election form.

Dependent Name: (last, first, mi) _____
Gender:          ☐ (M)ale   ☐ (F)emale
Social Security Number: ☐☐☐ – ☐☐ – ☐☐☐☐
Date of Birth: ☐☐ ☐☐ ☐☐☐☐
                M M D D Y Y Y Y
Relationship to Individual: ☐ (S)pouse  ☐ (C)hild

Dependent Name: (last, first, mi) _____
Gender:          ☐ (M)ale   ☐ (F)emale
Social Security Number: ☐☐☐ – ☐☐ – ☐☐☐☐
Date of Birth: ☐☐ ☐☐ ☐☐☐☐
                M M D D Y Y Y Y
Relationship to Individual: ☐ (S)pouse  ☐ (C)hild

Dependent Name: (last, first, mi) _____
Gender:          ☐ (M)ale   ☐ (F)emale
Social Security Number: ☐☐☐ – ☐☐ – ☐☐☐☐
Date of Birth: ☐☐ ☐☐ ☐☐☐☐
                M M D D Y Y Y Y
Relationship to Individual: ☐ (S)pouse  ☐ (C)hild

Dependent Name: (last, first, mi) _____
Gender:          ☐ (M)ale   ☐ (F)emale
Social Security Number: ☐☐☐ – ☐☐ – ☐☐☐☐
Date of Birth: ☐☐ ☐☐ ☐☐☐☐
                M M D D Y Y Y Y
Relationship to Individual: ☐ (S)pouse  ☐ (C)hild

## SECTION 3: INDIVIDUAL'S AUTHORIZATION

I authorize the benefit election I have indicated above. I understand that I will no longer be eligible for COBRA continuation coverage if I become entitled to Medicare, or become covered under another group health plan that does not contain a limitation or exclusion due to a pre-existing condition. I agree to remit the full current premium to Ceridian by the specified due dates, and I understand that coverage will be cancelled if timely remittance of premiums is not made, and that reinstatement of coverage is not available if coverage is cancelled for nonpayment of premium. I further understand that Ceridian will bill monthly and this bill is for my convenience only and that I am responsible for timely payment regardless of whether or not I have received a bill. I agree to notify Ceridian in writing of any change regarding address, eligibility, dependent status or disability status. Finally, I certify that the above statements are complete and accurate to the best of my knowledge and that I have read the additional information sheet attached to this form.

Individual's Signature                          Date

---

*IMPORTANT:*
This form must be sent within 60 days of the date of coverage termination or the date of the enclosed *"Important Notice,"* whichever is later. The first premium payment is due within 45 days of the date this election form is sent. However, claims will not be paid until premium payment is received. If you choose to send a payment with this Election Agreement, please make your check payable to "Ceridian COBRA Services."
*MAILING INSTRUCTIONS:  DO NOT MAIL IF YOU HAVE ELECTED BY NET OR ELECTED BY PHONE*
Mail completed form to: Ceridian COBRA Services Center • P.O. Box 534066 • St. Petersburg, Florida 33747-4066

**INDIVIDUAL — MAKE A COPY OF THIS PAGE FOR YOUR RECORDS**

© 2007 Ceridian Corporation. All rights reserved.
CS-205-3-07

# EXHIBIT "3"

**Ceridian COBRA Continuation Coverage Invoice**
www.ceridian-benefits.com

**CERIDIAN**

Customer Service Hotline
800-877-7994

Group Benefits with: UNITED AUTO INSURANCE GROUP
Coverage: Medical:Indiv+2/Fam;Dental:Indiv+2/Fam

2007116611001843004839064500

NCS-AB-0180-473
JONATHAN B. HARRIS
575 ISLAND WALK EAST
MT PLEASANT, SC  29464-6010

Date: 11/19/07
ID#:  NC-23876728

| Period of Coverage | Premium | Amount Paid | Amount Due | Date Due | Grace Period Ends |
|---|---|---|---|---|---|
| *11/12/07 to 12/11/07 | 1162.13 | 0.00 | 1162.13 | 11/12/07 | 12/12/07 |
| 12/12/07 to 01/11/08 | 1162.13 | 0.00 | 1162.13 | 12/12/07 | 01/11/08 |

\* GRACE PERIOD REMINDER NOTICE: Our records show that the full premium due
for your continuation coverage, as shown above, has not yet been applied
to your account.

Coverage will be cancelled if premium payment is not made on or before each grace period ending date shown above. If
coverage is cancelled for non-payment of premium, reinstatement of coverage is not allowed. No partial payments will be ac-
cepted. Acceptance of payments by Ceridian, as collection agent for the employer, is without prejudice and with reservation of
all rights. Please see reverse for important information regarding eligibility, premium billing and payment requirements.

**MAKE CHECKS PAYABLE TO:**

COBRASERV

CobraServ National Service Center: P.O. Box 534099 St. Petersburg, FL 33747

CobraServ National Service Center
3201 34th Street South
St. Petersburg FL, 33711-3828
800-877-7994

*[handwritten: Ceritian not the Plan administrator make an exception has no authority to makes exemption Group Health Plan administrator of Cobra]*

February 18, 2008

JONATHAN B. HARRIS
575 ISLAND WALK EAST
MT PLEASANT, SC 29464-6010

ID: NC-23876728

Re:   Termination of COBRA Benefits with
      UNITED AUTO INSURANCE GROUP

Dear JONATHAN B. HARRIS,

This is to advise you that your Medical/HMO and Dental coverage
under COBRA continuation was terminated as of January 11, 2008
due to:

   Failure to pay full and timely premium.

*[handwritten: Kathy Marinello / Ms. Marinelli]*

Manager, CobraServ

*[handwritten: cobra 8008772994]*

*[handwritten: Corporate HQ. 952-853-8100]*

*[handwritten: Florida / Linda Lendynard / 72)-395-8582]*

*[handwritten: 800-729-7655 / payroll 800-607-3333 / www.myceridian.com]*

*[handwritten: ceridian]*

## EXHIBIT "4"

## J.B. Harris, P.A.

**From:**     Charles Grimsley [cgrimsley@uaig.net]
**Sent:**     Tuesday, March 04, 2008 1:12 PM
**To:**        J.B. Harris, P.A.
**Subject:** RE:

J.B.:

From one lawyer to the next, I am certain that you understand that I do not have any decision making authority in this matter, and that I will advocate the decision that is made by my client. At present, I do not have a decision to convey. Research is being conducted in relation to the facts and the law, and a decision will be forthcoming. At this point, I have nothing further that I can relate.

Charles J. Grimsley, Esq.

**From:** J.B. Harris, P.A. [mailto:jbharrisesq@hotmail.com]
**Sent:** Tuesday, March 04, 2008 9:15 AM
**To:** Charles Grimsley
**Subject:**
**Importance:** High

Charles: From one lawyer to the next and as a former United in-house attorney, I want to thank you for showing me the professional courtesy of a return phone call after I left you 3 or 4 urgent messages on your voice mail last week to call me. I'm still waiting.

J.B. Harris & Assoc., P.A.
Attorneys at Law
2555 Ponce de Leon Blvd., Suite 320
Coral Gables, FL 33134
Ph: 305-444-6121
Cell: 786-303-8333
Toll Free: 888-300-6121
Fax: 305-444-5508

E-mail is not a secure mode of communication and may be accessed by unauthorized persons. This communication originates from the law firm of J.B.Harris, P.A. and is protected under the Electronic Communication Privacy Act, 18 U.S.C. S2510-2521. The information contained in this e-mail message is intended for the use of the individual or entity to which it is addressed and may contain information that is proprietary, privileged, confidential, and exempt from disclosure under applicable laws. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivery to the intended recipient, you are hereby notified that any use, printing, reproduction, disclosure or dissemination of this communication may be subject to legal restriction or sanction. Personal messages express views solely of the sender and shall not be attributed to the law firm. If you received this communication in error, please notify the sender immediately by e-mail or telephone at (305) 444-6121.

This email is confidential and it is intended solely for the use of the individual or entity to which it is addressed. If you are not the named addressee, you should not disseminate, distribute or copy this email. If you have received this email in error, please notify the sender by a Reply.

If this email is addressed to or sent by an attorney, this email is either an attorney-client privileged communication or a work-product privileged communication, or both. The United Automobile Insurance Company as well as the sender and intended recip⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ assert the aforesaid privileges, and do not waive any suc⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ion. This statement shall not hereafter be construed as⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ights that the parties may have to limit or prohibit any furt⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱ ⸱il.

# EXHIBIT "5"

3/17/2008

## J.B. Harris, P.A.

**From:** Charles Grimsley [cgrimsley@uaig.net]
**Sent:** Tuesday, March 04, 2008 2:08 PM
**To:** J.B. Harris, P.A.
**Subject:** RE:

The decision stands. I will not debate the decision with you in this medium. If my client is required to defend its decision in response to an investigation or a lawsuit, our legal counsel will assert our arguments at that time. CG

**From:** J.B. Harris, P.A. [mailto:jbharrisesq@hotmail.com]
**Sent:** Tuesday, March 04, 2008 1:16 PM
**To:** Charles Grimsley
**Subject:** RE:

That's all I need to know.

**From:** Charles Grimsley [mailto:cgrimsley@uaig.net]
**Sent:** Tuesday, March 04, 2008 1:12 PM
**To:** J.B. Harris, P.A.
**Subject:** RE:

J.B.:

From one lawyer to the next, I am certain that you understand that I do not have any decision making authority in this matter, and that I will advocate the decision that is made by my client. At present, I do not have a decision to convey. Research is being conducted in relation to the facts and the law, and a decision will be forthcoming. At this point, I have nothing further that I can relate.

Charles J. Grimsley, Esq.

**From:** J.B. Harris, P.A. [mailto:jbharrisesq@hotmail.com]
**Sent:** Tuesday, March 04, 2008 9:15 AM
**To:** Charles Grimsley
**Subject:**
**Importance:** High

Charles: From one lawyer to the next and as a former United in-house attorney, I want to thank you for showing me the professional courtesy of a return phone call after I left you 3 or 4 urgent messages on your voice mail last week to call me. I'm still waiting.

J.B. Harris & Assoc., P.A.
Attorneys at Law
2555 Ponce de Leon Blvd., Suite 320
Coral Gables, FL 33134
Ph: 305-444-6121
Cell: 786-303-8333
Toll Free: 888-300-6121
Fax: 305-444-5508

E-mail is not a secure mode of comm     **EXHIBIT "6"**     unication originates from the law
firm of J.B.Harris, P.A. and is protecte                      2521. The information contained
in this e-mail message is intended fo                      tain information that is proprietary,

3/17/2008



# United States Senate
WASHINGTON, DC 20510-0905

BILL NELSON
FLORIDA

March 4, 2008

Mr. J.B. Harris, Esq.
2555 Ponce De Leon Boulevard, Suite 320
Coral Gables, Florida 33134

Dear Mr. Harris:

Thank you for contacting my office regarding the termination of your COBRA benefits by Ciridian Corporation. I appreciate being made aware of your concerns and will be pleased to look into this matter.

Currently, I am in touch with the United States Department of Labor on your behalf. As soon as I have a response, I will share the results with you.

Again, thank you for contacting my office. I want you to know that as your U.S. Senator from Florida, I welcome the opportunity to serve you. If I can assist you with any other matter, please do not hesitate to let me know.

Sincerely,

Bill Nelson

BN/dk

# EXHIBIT "7"

**≈JS 44 (Rev. 11/05)**

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

J.B. Harris, pro se

## DEFENDANTS

United Auto Ins. Grp., Inc.
Ceridian Corp.

**(b)** County of Residence of First Listed Plaintiff   **Miami Dade**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Miami Dade
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

J.B. Harris, Esq
2555 Ponce de Leon blvd., Ste 320
Coral Gables, FL 33134

Attorneys (If Known)

Charles Grimsley

**(d)** Check County Where Action Arose:  ☒ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**Miami-08CV20703 Huck/Simonton**

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

**FILED by INTAKE**

**MAR 18 2008**

**STEVEN M. LARIMORE**
**CLERK U.S. DIST. CT.**
**S.D. OF FLA. MIAMI**

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):

a) Re-filed Case ☐ YES ☒ NO      b) Related Cases ☐ YES ☒ NO

JUDGE                    DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):   29 U.S.C. A. 1132 et seq   COBRA
Denial of Benefits

LENGTH OF TRIAL via ___ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

**ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE**

SIGNATURE OF ATTORNEY OF RECORD

DATE  3/18/08

**FOR OFFICE USE ONLY**

AMOUNT  350   RECEIPT #  977078   IFP