UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-20703-CIV-DIMITROULEAS

J.B. HARRIS,

    Plaintiff,                                           Magistrate Judge Rosenbaum

vs.

UNITED AUTOMOBILE INSURANCE
GROUP, INC., a Florida corporation, and
CERIDIAN CORPORATION, a foreign
corporation,

    Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

THIS CAUSE is before the Court upon the Defendants, United Automobile Insurance Group, Inc., a Florida corporation, and Ceridian Corp, a foreign corporation's Motion to Dismiss Plaintiff's Second Amended Complaint with Prejudice and Strike his Demand for Jury Trial [DE 66]. The Court has carefully considered the Motion, Defendants' Memorandum in Support [DE 65], Plaintiff's Response in Opposition to Defendant's Motion to Dismiss [DE 68], Defendants' Reply [DE 72], the Underlying Second Amended Complaint [DE 63], the attached exhibits,[1] and is otherwise fully advised in the premises.

**I. BACKGROUND**

On March 18, 2008, Plaintiff, J.B. Harris ("Harris"), representing himself, filed a Complaint and Application for Preliminary Injunction against Defendants United Automobile Insurance Group, Inc. ("UAIG") and Ceridian Corporation ("Ceridian") [DE-1]. On March 21,

---

[1] The Plaintiff attaches the following documents to the Second Amended Complaint: the SPD, three (3) email exchanges, the letter and information Ceredian sent to Plaintiff concerning his health care benefits coverage rights, an invoice and the Plaintiff's notification of termination of Cobra Benefits.

2008, Plaintiff filed an Amended Complaint and Application for Preliminary Injunction. [DE-5].[2] On April 7, 2008 the Plaintiff withdrew his Application for Preliminary Injunction [DE 24] and the Court denied the Application as Moot that same day [DE 27]. On May 15, 2008 the Plaintiff filed his Second Amended Complaint ("Complaint") [DE 63], which is now the operative Complaint in this action. On May 20, 2008 the Defendants filed the instant Motion to Dismiss.

The Complaint indicates that Harris was employed by Defendant UAIG for a short period of time (66 days) in 2007. During his employment, Harris, his wife, and their three children were enrolled in the company's CIGNA Health Care Open Access Plus health insurance plan ("Plan"). On or about May 11, 2007, Plaintiff was terminated. Upon his termination, Plaintiff opted to continue his health insurance coverage through the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1161. The continued coverage was particularly attractive for the Plaintiff because his wife and children continued to reside in South Carolina and this insurance plan provided multi-state coverage for a single family. Defendant Ceridian is a third-party COBRA plan administrator employed by UAIG to process the COBRA premium payments for UAIG's former employees. According to the Plaintiff, however, UAIG is a self-insured, self-funded Plan Sponsor and Administrator and is the only true Plan Administrator. Ceridian merely acts as UAIG's agent in complying with its COBRA obligations due to a covered employee under the Plan.

The Complaint states that some time after May 22, 2007, Plaintiff received a letter from Ceridian notifying him of his health care benefits continuation rights. The May letter indicated

---

[2] On March 24, 2008, Judge Paul C. Huck recused himself and the case was reassigned to the undersigned [DE 6].

that an "Additional Information" sheet was enclosed to fully explain Plaintiff's rights. Plaintiff contends that the sheet was mere boilerplate language and even stated that it did not fully describe continuation coverage or other rights under the Plan. The sheet did, however, inform the Plaintiff that "Late payments cannot be accepted and will be returned, resulting in cancellation of your coverage with no possibility for reinstatement." The sheet further explained that more information was available under the Summary Plan Description ("SPD") or from the Plan Administrator. According to the Complaint, a SPD sets forth the contractual rights and duties of the employer and covered employee under a given COBRA plan (29 U.S.C. § 1022)–including all notice and plan cancellation provisions–and is required to be given to an employee within 90 days after he becomes a participant. 29 U.S.C. § 1024(b)(1)(A). Harris contends that he has never received a copy of the SPD as required by 29 U.S.C. §§ 1022 (a), (b), and § 1024(b).

After signing up for COBRA benefits, Plaintiff made his monthly premium payments, in the amount of $1,162.13. Plaintiff indicates that, though requested, internet payment in any form or automatic debit was not available–payment was to be made through the mail. However, up until January/February of 2008 the Plaintiff was always able to render on-time payment. Each month Plaintiff received an invoice and made the payment within the thirty (30) day grace period for payment.

In January, the Plaintiff received the invoice for coverage up to and including January 11, 2008. The invoice required payment on or before February 11, 2008. The invoice included both the due date for the January payment and the date that the grace period expired. The information sheet received by the Plaintiff indicates that payment by U.S. Postal Service is considered "timely" if it is "Postmarked by the U.S. Postal Service on or before the applicable grace period

expiration date, and received by Ceredian . . ." Plaintiff indicates that his wife wrote a check to Ceridian, dated February 8, 2008, which she placed in the mailbox on February 11, 2008. Plaintiff states that the envelope was postmarked a day later, on February 12, 2008, perhaps because of a mail carrier error, given that it was sent from an area of South Carolina that often employs part-time mail carriers. As the envelope was postmarked a day late, Ceridian informed Plaintiff that coverage was terminated retroactive to January 11, 2008. Accordingly, all of the Plaintiff and his family's doctors visits from January 11, 2008 forward remain uncovered.[3]

Plaintiff indicates that though he attempted to contact both Defendants, each informed him that resolution of the matter rested with the other Defendant. Plaintiff was eventually informed by James Trimble, Ceridian's chief compliance officer, that a day-late postmark constituted a qualifying event under the Plan. Plaintiff was also informed that "UAIG could reverse the decision." Harris then contacted Grimsley, UAIG's general counsel, who informed him that "the decision would stand." Mr. Harris did not appeal further, nor did he realize that there was a formal right to appeal under the Plan. Under the Plan, UAIG has discretionary authority to perform a full and fair review, of any appeal made by a claimant.

## II. DISCUSSION

Plaintiff's Complaint is a three (3) count Complaint. Count I of the Complaint seeks recovery of benefits under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B) from Defendant UAIG. Count II of the Complaint is a state law Breach of Contract claim against both Defendants, UAIG and Ceredian. Finally, Count III of the Complaint seeks damages against both Defendants for

---

[3] In the Plaintiff's Notice of Withdrawal of his Application for Preliminary injunction, he indicates that he and his family are now covered for prospective health care costs under his P.A. [DE 24].

violations of 26 CFR § 54.4980B-8.

In their Motion to Dismiss, Defendants argue that all three (3) counts of the Plaintiff's Complaint must be dismissed for failure to state a claim upon which relief can be granted. Defendants contend that Count I should be dismissed because the attached Plan documents themselves contradict the allegations of the Complaint. Defendants further argue that Count II must be dismissed because: (1) it is preempted by ERISA, and therefore is duplicative of Count I; and (2) no substantive damages are available for the procedural violation of ERISA alleged in Count II. Finally, Defendants allege that Count III must be dismissed because: (1) there is no private right of action under 26 CFR § 54.4980B-8, (2) no claim for equitable relief exists under 29 U.S.C. § 1132(a)(3) because the Plaintiff has standing to sue for money damages under 29 U.S.C. § 1132(a)(1)(B); and (3) extracontractual, compensatory and punitive damages are not available under ERISA. Additionally, Defendants argue that there is no right to a jury trial on any claims arising under ERISA. The Court will address each argument in turn.

### a. Motion to Dismiss Standard

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the allegations of the complaint must be taken as true and must be read to include any theory on which the plaintiff may recover. See Linder v. Portocarrero, 963 F.2d 332, 336 (11th Cir. 1992) (citing Robertson v. Johnston, 376 F.2d 43 (5th Cir. 1967)). To survive a motion to dismiss, the plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007) (abrogating Conley v. Gibson, 355 U.S. 41 (1957)). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1979.

### b. Count I

ERISA provides that "A civil action may be brought -- (1) by a participant or beneficiary -- (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). However, in this case, Plaintiff is not suing to enforce his rights under the Plan because he no longer has rights under the Plan. While the Plaintiff alleges that his benefits were "wrongfully" terminated, in determining benefits under the Plan, the Court must look at the Plan itself. See Chicago Dist. Counsil of Carpenters Welfare Fund v. Caremark, Inc., 474 F.3d 463, 466 (7th Cir. 2007) ("To the extent that the [ERISA] contracts [at issue] contradict the Complaint, the contracts trump the facts or allegations presented in the Complaint."). No party disputes that under the terms of the Plan the Plaintiff was required ensure that his payment was postmarked by February 11, 2008. It was not. Under the terms of the Plan, upon failure to make a timely payment the Plaintiff's insurance was subject to cancellation. UAIG was, therefore, within its rights in cancelling the Plaintiff's insurance. Accordingly, the Plaintiff has no right to recover benefits under the Plan.

What the Plaintiff is really arguing, is that his late payment should be excused because of the Defendant's failure to provide him with the SPD. However the Eleventh Circuit has held that procedural violations of ERISA's requirements do not entitle a plaintiff to substantive relief unless "the quantity of [the] procedural violations . . . work a substantive harm."[4] Harris v.

---

[4] While Harris makes conclusory allegations in his Response that the Defendants' procedural violations aggregated to "work a substantive harm," Harris, 809 F.2d at 1499, he does not identify what the harm or prejudice these procedural violations caused. Neither the number, nor the egregiousness of the procedural violations alleged in this case approach those present in Harris. In Harris, the court found that "the unavailability of the policy for the great number of the employees and the complete lack of any formal claims procedure in addition to [the Plan Administrator's] interpretation of its policy" combined to show that the Plan Administrator had "acted arbitrarily and

Pullman Standard, Inc., 809 F.2d 1495, 1499 (11th Cir. 1987).  The failure to provide an SPD or adequate explanation of benefits does not work a substantive harm unless the Plaintiff can show some prejudice.  Bush v. Humana Health Plan of Ala., Inc., 973 F. Supp. 1376, 1382 (M.D. Ala. 1997); see also Perrino v. S. Bell Tele. & Tele. Co., 209 F.3d 1309, 1318 n.9 (11th Cir. 2000) (noting that analogously to its holding in that case "several federal circuits have denied remedial relief for technical violations of ERISA's statutory requirements absent a showing that the violations have adversely affected the plaintiffs' ERISA rights.").  Prejudice must be shown even when the employer provides incorrect or faulty information in an SPD.  See Greeley v. Fairview Health Servs, 479 F.3d 612, 614 (8th Cir. 2007) ("In order for an employee to recover from his employer for a faulty SPD, this court requires the employee to show he relied on its terms to his detriment.").  The Tenth Circuit in Hein v. TechAmerica Group, Inc., 17 F.3d 1278 (10th Cir. 1994) most aptly describes the rationale behind this rule.  The court stated:

> Something more than just the failure of the employer to comply with its duties under ERISA is necessary to establish a right to alleged benefits.  Otherwise, ERISA would be turned into a strict liability statute: any time the employer failed to comply with its duties under ERISA, an employee would receive any alleged benefit he or she claims they expected.

Id. at 1280.

In this case, there is no dispute that the Plaintiff was notified of the date upon which his monthly payments were due.  There is also no dispute that the Plaintiff had been notified that failure to make the payment by this date could result in the cancellation of his policy.  Because there is no dispute that the Plaintiff already knew of all of the information that was not provided to

---

in bad faith when interpreting and implementing its policy." Id.  In Harris the "substantive harm" was that the Plan Administrator had misinterpreted the statute, thereby entitling the employees to relief under ERISA.  No such prejudice exists in this case.

him in the SPD,[5] the Court finds no prejudice in this case. Accordingly, Count I of the Complaint must be dismissed.

### c. Count II

The terms of ERISA apply to any non-exempt "employee welfare benefit plan." One of the core purposes of ERISA is to provide uniformity in the administration of employee benefit plans and avoid permitting plans to be administered under the varying standards created by different state laws. Engelhoff v. Engelhoff ex rel. Breiner, 532 U.S. 141, 148 (2001); Smith v. Jefferson Pilot Life Ins. Co., 14 F.3d 562, 570-71 (11th Cir. 1994). Accordingly, ERISA supplants "any and all State laws insofar as they may now of hereafter relate to any employee welfare benefit plan." 29 U.S.C. § 1144(a). This is so even though the state law claim may not precisely duplicate the remedies provided by ERISA. Aetna Health Inc. v. Davila, 542 U.S. 200, 216 (2004). Because Count II is a breach of contract claim that alleges Plaintiff's healthcare coverage was improperly terminated, the termination of the Plan "relates to" the Plan within the meaning of the ERISA preemption provision. See Swerhun v. Guardian Life Ins. Co., 979 F.2d 195, 198 (11th Cir. 1992) ("[W]e have consistently held that ERISA preempts state law breach of contract claims.").

The Plaintiff does not dispute that the state law claims alleged in Count II of the

---

[5] The Plaintiff also argues that he was not aware that the Plan gave him a right to appeal any termination to UAIG. In fact, according to the allegations of the Complaint, the Plaintiff "appealed" the termination of his benefits to whomever would listen. Plaintiff even admits in his Complaint that Trimble informed him that "UAIG could reverse the decision. However, even if the Court were to find that UAIG did not give the Plaintiff any appeal he was entitled to under the Plan, the Plaintiff still fails to show any prejudice suffered because under the Plan his benefits were properly terminated. Accordingly, any attempt to appeal the Plan Administrator's decision would have been futile. Furthermore, even if the Court were to find that the Defendants wrongfully withheld information concerning the Plaintiff's right to appeal, the Plaintiff's remedy would be an additional amount of time within which to file the administrative appeal with UAIG, not recovery of claimed benefits under the Plan. See Perrino, 209 F.3d at 1317-18. The Plaintiff does not request such relief in the Complaint.

Complaint "relate to" the Plan. Rather, in response to the Defendant's Motion, the Plaintiff acknowledges that UAIG is an ERISA entity and that the state law claims against UAIG are therefore preempted by ERISA. He therefore voluntarily dismisses the state law claims in Count II of the Complaint with respect to UAIG.[6] Harris continues to argue, however, that because Defendant Ceredian is not an ERISA entity that the preemption doctrine does not apply and therefore the state law claims alleged in Count II should survive the Defendants' Motion to Dismiss. An "ERISA entity" is defined as "the employer, the plan fiduciaries, the plan, and the beneficiaries." Perkins v. Time Ins. Co., 898 F.2d 470, 473 (5th Cir 1990). It is undisputed that Ceridian is not an ERISA entity. However, the Court need not decide whether the Plaintiff's claims against Ceredian are preempted because, as the Defendants point out, if Ceredian is not a fiduciary under the Plan, the Plaintiff cannot maintain a breach of contract action against Ceredian.[7] Any breach of contract claim would need to be against UAIG, and any such claim would be preempted by ERISA. Accordingly, Count II of the Complaint must be dismissed as to both Defendants.

### d. Count III

26 C.F.R. § 54.4980B-8 Answer 5 provides:

Payment that is made to the plan by a later date is also considered timely payment if either - - (1) Under the terms of the plan covered employees or qualified beneficiaries are allowed until that later date to pay their coverage for the period; or (2) Under the terms of

---

[6] The preempted claims would be replaced by an ERISA claim for improper denial of benefits, which is identical to the relief claimed in Count I of the Complaint under 29 U.S.C. § 1132(a)(1)(B).

[7] The Court further notes that the Plaintiff brings a claim for breach of contract based on the failure to provide an SPD as required by 29 U.S.C. § 1022(a) and (b). However, ERISA only imposes this obligation on the plan administrator. Stuart v. Metropolitan Life Ins. Co., 664 F. Supp. 619, 621 (D. Me. 1987). Accordingly, the Plaintiff's breach of contract claim against Ceredian must also fail on these grounds.

> an arraignment between the employer or employee organization and an insurance company, health maintenance organization, or other entity that provides plan benefits on the employer's or employee organization's behalf, the employer or employee organization is allowed until the later date to pay for coverage of similarly situated nonCOBRA beneficiaries for the period.

The Plaintiff cannot recover directly under 26 C.F.R. § 54.4980B-8 because the Treasury regulations do not create substantive rights under ERISA. See e.g. Tulley v. Ethyl Corp., 861 F.2d 120, 125 (5th Cir. 1988); Craig v. Benis Co., Inc., 517 F.2d 677, 685-86 (5th Cir. 1975). Harris correctly points out that Courts generally "defer to the Internal Revenue Service's interpretation of parallel statutory language, since the IRS is one of the agencies charged with administering ERISA." Tulley, 861 F.2d at 125. However, the Plaintiff still points to no substantive provision under which he can recover. The Treasury regulations are useful and sometimes even authoritative in interpreting ERISA. Nonetheless, absent a statutory provision providing for relief when coverage is terminated for untimely payment, where payment was "timely" as defined in the regulation, the Plaintiff states no valid claim for relief. Accordingly, Count III of the Complaint must also be dismissed for failure to state a valid cause of action.

### e. Jury Trial Demand

Because the Court finds that the Plaintiff's Complaint should be dismissed in its entirety, the Court need not reach the issue of the Plaintiff's jury trial demand.

### III. CONCLUSION

Accordingly, for the foregoing reasons it is **ORDERED AND ADJUDGED** as follows:

1. The Defendants' Motion to Dismiss the Plaintiff's Second Amended Complaint With Prejudice and Strike his Demand for Jury Trial [DE 72] is hereby **GRANTED**;

2. The above-styled case is hereby **DISMISSED without prejudice**;

3. Any Third Amended Complaint shall be filed on or before September 10, 2008. Any Third Amended Complaint shall not attempt to re-raise claims already dismissed in this Order. Failure to abide by the terms of this Order will result in dismissal with prejudice.

**DONE AND ORDERED** in Chambers, in Broward County, Fort Lauderdale, Florida this 26th day of August, 2008.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Counsel of record