# United States Court of Appeals
Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

For rules and forms visit
www.ca11.uscourts.gov

October 26, 2009

FILED by _____ D.C.
OCT 29 2009
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

Steven M. Larimore
Clerk, U.S. District Court
400 N MIAMI AVE RM 8N09
MIAMI FL 33128-1813

**Appeal Number: 08-16097-DD**
Case Style: J. B. Harris v. United Automobile Ins. Group, Inc.
District Court Number: 08-20703 CV-WPD

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

Also enclosed are the following:
    Original Exhibits, consisting of: one envelope
    Original record on appeal or review, consisting of: three volumes

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being mailed to counsel and pro se parties. A copy of the court's decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: James O. Delaney (404) 335-6113

Encl.

MDT-1 (06/2006)

# United States Court of Appeals
For the Eleventh Circuit

No. 08-16097

District Court Docket No.
08-20703-CV-WPD

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Aug 18, 2009

THOMAS K. KAHN
CLERK

J.B. HARRIS,

    Plaintiff-Appellant,

versus

UNITED AUTOMOBILE INSURANCE GROUP, INC.,
a Florida corporation,
CERIDIAN CORP.,

    Defendants-Appellees.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

---

Appeal from the United States District Court
for the Southern District of Florida

---

JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

ISSUED AS MANDATE
OCT 26 2009
U.S. COURT OF APPEALS
ATLANTA, GA.

Entered: August 18, 2009
For the Court: Thomas K. Kahn, Clerk
By: Gilman, Nancy

**CORRECTED**

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 08-16097
Non-Argument Calendar

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 18, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 08-20703-CV-WPD

J.B. HARRIS,

Plaintiff-Appellant,

versus

UNITED AUTOMOBILE INSURANCE GROUP, INC.,
a Florida corporation,
CERIDIAN CORP.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Florida

(August 18, 2009)

Before BIRCH, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

This case presents an issue of the interpretation of 26 C.F.R. § 54.4980B-8, A-5, a federal regulation relating to the Employee Retirement and Income Security Act ("ERISA") and the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1161. Because we determine that 26 C.F.R. § 54.4980B-8, A-5 does not apply to the employer-provided insurance plan in which Harris was participating, his late payment of his insurance premium will not be excused under that regulation. We, therefore, affirm the district court's dismissal of his complaint to reinstate insurance benefits for failure to state a claim.

## BACKGROUND

United Automobile Insurance Group, Inc. ("UAIG") employed Harris as in-house counsel. After UAIG terminated his employment on May 11, 2007, Harris elected to maintain continuing health insurance coverage through COBRA. According to Harris's Second Amended Complaint ("the complaint"), UAIG is a "sponsor and administrator for a self-insured, self-funded health benefit plan for medical claims." Ceridian, the other named defendant, "is a COBRA plan administrator employed by UAIG to processes [*sic*] COBRA premium payments for UAIG's former employees, who opt to enroll in COBRA."

Sometime in late May 2007, Harris received a letter from Ceredian notifying him of his right to COBRA coverage, but he never received the Summary Plan Description as required under 29 U.S.C. §§ 1022 and 1024(b).

According to the benefits plan,

> Although subsequent payments are due by the first day of the month, you will be given a grace period of 30 days after the first day of the coverage period to make each monthly payment. Your COBRA continuation coverage will be provided . . . as long as payment is made before the end of the grace period for that payment . . . If you fail to make a payment before the end of the grace period for that coverage period, you will lose all rights to COBRA continuation coverage under the Plan.

The notice and information sheet attached to the election for COBRA benefits explained, "[t]o be considered a timely payment, your premium payment must be . . . postmarked by the U.S. Postal Service on or before the grace period expiration date and received by Ceredian." The notice further provided,

> [l]ate payments cannot be accepted and will be returned, resulting in cancellation of your coverage with no possibility for reinstatement. Note 3: . . . If you wait until the end of the grace period to pay, you risk not having sufficient time to correct errors, which may or may not be within your control (such as . . . late/missed pickups by the U.S. Postal Service). In such cases, your coverage will be cancelled with no possibility of reinstatement.

Harris made each monthly premium payment in a timely manner until January 2008. Harris received the monthly invoice for that period, stating that the

payment was due January 11, with a thirty-day grace period; thus, payment had to made by February 11.

Harris asserts that his wife placed the payment in the mailbox on February 11, 2008, but the envelope containing the payment was not post-marked until February 12. According to the complaint, Harris's wife

> either inadvertently [placed the check in the mailbox] after the mail carrier had made his rounds. Or the envelope was picked up that day and post-marked a day later – February 12, 2008 – a real possibility in some areas of South Carolina – like where Mrs. HARRIS lives – because the postal service often employs part-time mail carriers, who use their own vehicles to deliver the mail, and the mail could have gotten delayed, misplaced or even left in the carrier's car overnight, before making its way to the post office the next day to be postmarked.

Because the envelope was not received within the time period for payment and was postmarked one day after the end of the grace period, Ceridian terminated Harris's COBRA coverage. Harris attempted to resolve this with UAIG and Ceridian, but they refused to reinstate his coverage.

Harris filed the instant complaint, alleging three counts: In count I, Harris alleged that he was entitled to recover benefits from UAIG under 29 U.S.C. § 1132(a)(1)(B) and requested reinstatement of benefits, as well as damages, fees, and expenses. According to Harris, UAIG had the discretion to consider his entitlement to benefits, but refused to do so. In count II, Harris claimed breach of

4

contract against both defendants for the failure to supply the Summary Plan Description as required and for terminating his benefits. In count III, Harris alleged violations of 26 C.F.R. § 54.4980B-8, A-5. This regulation provides that a payment is considered timely if submitted within 30 days after the first day of the period of coverage or any longer period of time provided under the terms of the plan. 26 C.F.R. § 54.4980B-8, A-5. Additionally, if the employer and an insurance company have an arrangement whereby the employer has a longer period of time to pay for coverage for non-COBRA beneficiaries, then the employee – or former employee, rather – shall be allowed the same period of time to make his premium payments. Id. According to Harris, UAIG, as a self-funded plan sponsor and administrator, pays claims when they come due or funds a claims' account at intervals that exceed the time limit for payment imposed on Harris, and thus violates the above regulation. Because UAIG has more time than 30 days – in fact no set time at all – to pay claims or fund the account, Harris should be entitled to the same time period in which to pay his premiums.

    The defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion to dismiss. Addressing Harris's claim for recovery of benefits under 29 U.S.C. § 1132(a)(1)(B) in count I, the court found that Harris had no right to recover benefits under the plan because

UAIG was within its rights to cancel his insurance after failing to receive a timely premium payment. The court also found that Harris's allegation that UAIG committed a procedural violation by not providing the Summary Plan Description did not entitle Harris to relief because Harris was not prejudiced by this alleged violation. With respect to the state law breach of contract claim in count II, the court found Harris's claim against Ceridian could not proceed because Ceridian did not owe any fiduciary obligations to Harris. Harris had already conceded that his state-law claims against UAIG were preempted by ERISA law. Finally, the court found that there was no merit to the allegations in count III, seeking damages for violations of 26 C.F.R. § 54.4980B-8, because the regulation did not create substantive rights. Accordingly, the court dismissed Harris's complaint.

The court then informed Harris that any third amended complaint must be filed by September 10, 2008 and could not re-raise issues already dismissed. The court warned that the failure to comply would result in dismissal with prejudice. Harris did not file a third amended complaint, and the court granted the defendants' subsequent motion to dismiss with prejudice. Harris timely appealed.

## STANDARD OF REVIEW

We review a grant of a motion to dismiss for failure to state a claim de novo, "accepting the allegations in the complaint as true and construing them in

the light most favorable to the plaintiff." Spain v. Brown & Williamson Tobacco Corp., 363 F.3d 1183, 1187 (11th Cir. 2004).

## DISCUSSION

On appeal, Harris asserts only that the regulations at 26 C.F.R. § 54.4980B-8 give rise to a claim for benefits under 26 U.S.C. § 1132(a)(1)(B) and that under these regulations he should have been allowed the same period of time to pay his COBRA premium as UAIG is given to fund the plan.[1] He thus argues that his benefits were wrongly terminated in violation of § 54.4980B-8.

Treasury regulation § 54.4980B-8 presents a series of questions and answers applicable to COBRA coverage. Question and answer 5 provides:

> Q-5: What is timely payment for COBRA continuation coverage? A-5: (a) Except as provided [here] . . . timely payment for a period of COBRA continuation coverage under a group health plan means payment that is made to the plan by the date that is 30 days after the first day of that period. Payment that is made to the plan by a later date is also considered timely payment if . . .
> (2) Under the terms of an arrangement between the employer or employee organization and an insurance company . . . or other entity that provides plan benefits on the employer's or employee organization's behalf, the employer or employee organization is allowed until that later date to pay for coverage of similarly situated nonCOBRA beneficiaries for the period.

---

[1] Because he limits his arguments on appeal to this issue, the remainder of his claims raised in the complaint are deemed abandoned. Rowe v. Schreiber, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998). We will not, therefore, address his state law claims for breach of contract or whether the failure to supply him with the Summary Plan Description entitles him to relief.

26 C.F.R. § 54.4980B-8, A-5.

We conclude that this regulation does not entitle Harris to additional time beyond that provided by UAIG's plan. The parties agree that UAIG was self-funding, meaning that medical claims were paid from the employer's assets rather than being paid through an insurance policy. In other words, UAIG did not have a relationship such as the one described in the above regulation; it did not have an "arrangement" under the terms of which it was given a certain period of time to pay for the coverage of non-COBRA beneficiaries. The additional time frame provided in the regulation applies only to those plans that are fully-funded, *i.e.* that involve an agreement with an insurance company to provide benefits. Thus, § 54.4980B-8, A-5 does not apply to the plan funded and sponsored by UAIG. Because the regulation does not apply to Harris's COBRA plan, Harris's time to submit his premium payment was not extended beyond February 11, 2008 and UAIG was within its rights in terminating Harris's coverage.

Harris also argues that his payment should have been considered "made" on the day his wife deposited it into the mailbox, February 11. Using this date, his payment would have been timely.[2] The notice that Harris received, however,

---

[2] Although Harris did not clearly make this argument in his opening brief to this court, the defendants interpreted his brief as making this point. Furthermore, we construe Harris's brief liberally, as he is proceeding pro se. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th

8

clearly stated that a payment would be considered made as of the date that it is postmarked, if sent through the U.S. mail. Additionally, the notice warned Harris of the dangers of mailing payments at the end of the grace period as this would "risk not having sufficient time to correct [any] errors . . . (such as . . . late / missed pick-ups by the U.S. Postal Service)." Harris disregarded this warning, assumed the risk that the post office would not postmark his payment envelope on the same day that his wife deposited it into the mailbox, and accordingly failed to timely submit payment for his COBRA premium. Under the facts as alleged in the complaint, UAIG did not act improperly in terminating his coverage. We, therefore, affirm the district court's dismissal of Harris's complaint.[3]

Although the above reasons are not the same grounds upon which the district court dismissed Harris's complaint, these are questions of law and "[w]e may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007).

---

Cir. 1998).

[3] The defendants also discuss whether the district court properly dismissed Harris's complaint with prejudice after he chose not to file a third amended complaint. Harris, however, does not appeal that ruling by the district court and so we do not address that issue. United States v. Cunningham, 161 F.3d 1343, 1344 (11th Cir. 1998).

We turn now to the motions filed by the defendants before this court. The defendants have requested fees and costs pursuant to 29 U.S.C. § 1132(g)(1) and Federal Rule of Appellate Procedure 38. The defendants argue that Harris acted in bad faith by filing this appeal, which they assert lacks any factual, contractual, or statutory basis.

Section 1132 provides, "[i]n any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In determining whether fees should be awarded under § 1132(g)(1), this court considers the following factors:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; (5) [and] the relative merits of the parties' positions.

Freeman v. Continental Ins. Co., 996 F.2d 1116, 1121 (11th Cir. 1993). "[N]o one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address . . . In

particular types of cases, or in any individual case, however, other considerations may be relevant as well." Id. (citations omitted).

Considering these factors, an award of fees is not warranted in this case. First, the district court made no finding that any party acted in bad faith, and the record on appeal does not establish any bad faith. Although the regulation at issue does not apply to Harris's COBRA benefits, the district court failed to consider Harris's argument on this point and there is little case law interpreting the regulation. Thus, it cannot be said that Harris's appeal was wholly frivolous. Moreover, UAIG does not seek fees to benefit other plan participants. On these facts, UAIG is not entitled to fees under 29 U.S.C. § 1132(g)(1).

Federal Rule of Appellate Procedure 38 provides, "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed. R. App. P. 38. For the reasons discussed above, we do not believe sanctions are warranted here.

The defendants also request that this court strike certain attachments to Harris's response to the motion for fees and references Harris made to UAIG's bad faith. Because we find in favor of the defendants without regard to the allegedly offensive response, we deny this motion as moot. The defendants further moved

11

for attorney's fees under Federal Rule of Appellate Procedure 38 for having to file the motion to strike. We decline to award these fees.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's dismissal of Harris's complaint.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit
By: _____
Deputy Clerk
Atlanta, Georgia